# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

AARON WELCH, SR.

                                        Plaintiff,

                                                        5:18-CV-461
            v.                                          (MAD/ATB)

SUSAN FITZGERALD, et al.,

                                        Defendants.

Aaron Welch, Sr.,  Plaintiff pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Aaron Welch, Sr. (Dkt. No. 1).  Plaintiff has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 5, 6).[1]  For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(I)-(iii).

## I.    IFP Application/Representation

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 5).  This court agrees and finds that plaintiff is financially

---

[1] Plaintiff originally submitted an incomplete application to proceed IFP. (Dkt. No. 2).  Based upon the defects in his application, the Honorable Mae A. D'Agostino ordered administrative closure of the action until plaintiff filed his properly completed form. (Dkt. No. 4).  The case was reopened for initial review after plaintiff filed a completed IFP application. (Dkt. No. 7).

eligible to proceed IFP.  To the extent that parts of the complaint may be read as an attempt by plaintiff to bring this action on behalf of himself and his three minor children, AAW, ALW, and ABW, it is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [2]  (Compl. ¶ 9). *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007).  *See also* 28 U.S.C. § 1654. Therefore, plaintiff may not represent any of his minor children in this action, or apply for IFP status on their behalf.[3]  *Armatas v. Maroulleti*, 484 F. App'x 576, 577 (2d Cir. 2012); *Tindall v. Poultney High School Dist.*, 414 F.3d 281, 284 (2d Cir. 2005).  The court will proceed to consider the complaint only as it applies to plaintiff.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (I) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

---

[2] Plaintiff did not include his children as parties in the caption of this proceeding, or seek any monetary relief on their behalf.  However, he alleges the deprivation of the rights of AAW, ALW, and ABW in his second, fourth, and fifth causes of action. (Compl. ¶¶ 26, 28, 29).

[3] *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b)).  The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.*

against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(I) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

3

## II.    **Complaint**

The court will attempt to summarize the claims that plaintiff may be making, keeping in mind that great liberality must be shown to pro se plaintiffs.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).  Plaintiff names six defendants.  Three of the defendants are social workers or supervisors for the Schenectady County Department of Social Services ("DSS"): Susan Fitzgerald, Susana Hurley, and Amy Hochmuth. (Compl. ¶¶ 3-5).  Two of the defendants are clerks of the Schenectady County Family Court: Denise Riggi (Chief Clerk) and Lawrencia Colon (Deputy Clerk).  Plaintiff has also named the County of Schenectady as a defendant.

Plaintiff's three minor children are currently in the physical custody of their mother, Amber Foley. (Compl. ¶ 9-10).  In May 2013, defendants Fitzgerald and Hurley initiated a neglect proceeding against Ms. Foley. (Compl. ¶ 10). Plaintiff was not named as a party to the proceeding, but was listed as the childrens' father on the petition to the court. (*Id*.)  Plaintiff alleges that, as part of this neglect proceeding, defendants Fitzgerald and Hurley "purposefully set a condition within a court order . . . prohibiting Amber Foley from allowing the minor children to have any contact with the Plaintiff . . . ." (Compl. ¶¶ 10-11).  Plaintiff has not included a copy of the order with his complaint.

Plaintiff has been incarcerated at the Great Meadow Correctional Facility since at

4

least August 2014. (Compl. ¶¶ 2, 12).  He contends that officials at the New York State Department of Corrections ("DOCCS") were provided a copy of the May 2013 "court order," and interpreted it as "an Order of Protection enjoining contact between the children and their father."[4] (Compl. ¶¶ 12-13).  He also alleges that when Ms. Foley filed an April 2015 petition in New York State Family Court to modify the visitation restrictions, that Ms. Foley was advised by "Family Court, Schenectady County" that "there was no Order prohibiting the children from visiting Plaintiff in prison." (Compl. ¶ 13).  Despite this, plaintiff's children have still been prohibited from visiting him. (*Id*.)

Seeking restoration of his visitation rights by DSS, plaintiff corresponded with defendants Fitzgerald and Hurley. (Compl. ¶ 14).  In this correspondence, he expressed his concerns that Ms. Foley or others may be abusing the children. (*Id*.)  Defendants Fitzgerald and/or Hurley responded via "form letters," advising him to "contact an attorney" because they "could not give him legal advice." (Compl. ¶ 14-15).  Plaintiff also filed multiple petitions for visitation in Schenectady County Family Court. (Compl. ¶ 16-17).  Defendant Hurley opposed these petitions, and to date, the family court has denied all of plaintiff's requests. (*Id*.).

Plaintiff contacted defendants Hurley and Hochmuth regarding new neglect and abuse allegations against Ms. Foley in October 2016 and March 2017. (Compl. ¶¶ 18-

---

[4] No DOCCS official is named as a defendant in this action.

20).  He alleges that defendants Hurley and Hochmuth failed to investigate or otherwise act on these claims. (*Id*.)  In November 2016, plaintiff filed a "family offense petition" in Schenectady County Family Court against Ms. Foley. (Compl. ¶ 20).  Family Court Judge Mark Powers dismissed this petition without prejudice on February 3, 2017, but allegedly forwarded the matter to Child Protective Services for investigation. (*Id*.)  Unsatisfied with this result, plaintiff filed another neglect petition on or about March 9, 2017. (Compl. ¶ 21).  Although it is unclear from the complaint, plaintiff implies that this March 2017 petition is still pending.

Plaintiff alleges that defendent Hochmuth misrepresented facts to the court during these proceedings, by stating that plaintiff had "no concerns" about visitation and "that there were no visitation or custody petitions pending." (Compl. ¶ 22).  He also alleges that defendant Hochmuth told plaintiff that he "was in a maximum security prison" so "his opinions were irrelevant." (*Id*.)

During the pendency of these family court proceedings, plaintiff sent repeated correspondence to defendants Riggi and Colon of the Family Court clerk's office, including requests under the New York State Freedom of Information Law ("FOIL") seeking the addresses of his children. (Compl. ¶ 24).  He also alleges that he filed "several custody enforcement petitions" with the Family Court clerk's office. (*Id*.)  He states that as of the date of the filing of this federal complaint, "[d]efendant Riggi and [d]efendant Colon have not tendered a response to either [FOIL] request, nor his letter

6

requesting the address of his children, nor has there been any action on his custody enforcement petitions." (*Id.*)

Plaintiff contends that defendants Fitzgerald, Hurley, and Hochmuth deprived him of procedural and substantive due process by interfering with his parental visitation rights, by telling him that they could not give him legal advice, and by suggesting that he contact an attorney. (Compl. ¶¶ 25, 27, 28). He also alleges that they violated his right to equal protection by failing to "professionally carry out their duties in a manner consistent with other cases" because of his status as an inmate. (Compl. ¶ 28). He further alleges that these wrongful acts were a "common practice" endorsed by the County of Schenectady. (Compl. ¶ 28, 30). Plaintiff also contends that defendants Riggi and Colon deprived him of procedural due process and access to the courts by failing to respond to his FOIL requests, and by intentionally withholding information regarding his children's address. (Compl. ¶ 31). Plaintiff has requested monetary relief, and "injunctive relief" in the form of "immediate termination" of defendants Hurley, Fitzgerald, and Hochmuth by the County of Schenectady. (Compl. ¶¶ 32-34).

## III.    Due Process

### A.    Legal Standards

A parent's interest in the custody of his or her child is a constitutionally protected liberty interest, subject to due process protection. *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-104 (2d Cir. 1999) (citing inter alia *Cecere v. City of New York*, 967

F.2d 826, 829 (2d Cir. 1992)).  The "integrity" of the family has also received

protection under the Equal Protection Clause and the Ninth Amendment.[5] *Id.* (citing

*Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Santosky v. Kramer*, 455 U.S. 745, 753

(1982)).  Notwithstanding the existence of this constitutional right, there is no

constitutional right to an investigation by government officials.  *Town of Castle Rock v.*

*Gonzales*, 545 U.S. 748, 762 (2005).  In addition, the failure of defendants to meet local

or professional standards, without more, should not generally be elevated to the level of

a constitutional violation.  *Wilkinson*, 182 F.3d at 106 (citing *Young v. County of*

*Fulton*, 160 F.3d 899, 902 (2d Cir. 1998) (the fact that DSS employees violated New

York law does not necessarily give rise to a federal civil rights claim).  Even a faulty

investigation does not necessarily rise to the level of an unconstitutional investigation.

*Id.* (citing van *Emerik v. Chemung County Dep't of Soc. Svcs.*, 911 F.3d 863, 866 (2d

Cir. 1990)).

### B.    Application

Plaintiff has alleged that defendants Fitzgerald, Hurley, and Hochmuth violated

his procedural due process rights, but has failed to offer any facts to support this claim.

---

[5] Plaintiff does not assert the Ninth Amendment as a basis for his action, and it would not be applicable in this case.  The Ninth Amendment does not independently secure any constitutional rights that could support a section 1983 claim. *Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir.), *cert. denied*, 565 U.S. 881 (2011).  The Ninth Amendment refers only to "unenumerated" rights, while claims under section 1983 must be based on specific constitutional guarantees. *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006).  The Ninth Amendment does not apply in plaintiff's case.

As set forth in his complaint, plaintiff's visitation rights were allegedly terminated by a May 2013 court order, rather than any immediate action by defendants Fitzgerald, Hurley, and Hochmuth. (Compl. ¶ 10).  Likewise, the denial of plaintiff's subsequent petitions for visitation and other relief have been or will be decided by a Family Court judge and any applicable appellate court, not by any of the named defendants.

Because plaintiff was not a party to the May 2013 neglect proceeding against Ms. Foley, plaintiff would likely not have standing to appeal the resulting state court order. (Compl. ¶ 10).  Instead, he chose the available remedy of commencing his own family court proceedings instead, which have been unsuccessful to date.  It is unclear from the complaint if plaintiff has appealed those adverse decisions in state appellate courts. However, even when liberally construed, plaintiff's procedural due process challenge, as set forth in the complaint, is the type of federal court challenge to a state court decision that is barred by the *Rooker Feldman*[6] doctrine.  This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments.  *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).  The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination.  *Id.* (quoting

---

[6] *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

Four requirements must be met before the court may apply the *Rooker Feldman*

doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff

must complain of injuries caused by the state court judgment; (3) the plaintiff must

invite the district court to review and reject the state court judgment; and (4) the state

court judgment must have been rendered prior to the federal court proceeding. *James*

*v. State of New York,* No. CV-10-470, 2013 WL 1873276, at *2 (E.D.N.Y. March 6,

2013) (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v.*

*Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). If these requirements

are met, the federal court lacks jurisdiction even if the plaintiff alleges that the state

court action was unconstitutional. *Id.* (citations omitted). The "fundamental" question

is whether the injury alleged by the federal plaintiff "resulted from the state court

judgment itself or is distinct from the judgment." *Id.* (citations omitted). If the federal

constitutional claims are "inextricably intertwined" with the state court action, "then in

essence the district court would be called on to review the state court decision." *Id.*

However, if the plaintiff's claim raises an "independent claim" that is not the result of

the state court judgment, but rather denies a conclusion reached by the state court, then

federal court jurisdiction exists. *Id.*

Plaintiff has described at least one unsuccessful family court action that occurred

prior to his complaint, in which the court denied his request that his children be allowed

to visit.[7]  Although plaintiff alleges that defendants Fitzgerald, Hurley, and Hochmuth

participated in the litigation, his only injury – denial of visitation rights – resulted from

a state court order.  To the extent that plaintiff is unhappy with that state court decision,

or the proof presented during that state court proceeding, this court may not intervene.

A finding in plaintiff's favor regarding his parental visitation rights would necessarily

involve overturning the Family Court's adverse decision regarding the same rights, a

situation prohibited by *Rooker Feldman.  See Phifer v. City of New York*, 289 F.3d 49,

57 (2d Cir. 2002).

Plaintiff's claims that defendants Fitzgerald, Hurley, and Hochmuth have failed

to adequately investigate his new allegations of abuse or neglect against Ms. Foley do

not implicate a procedural due process claim under the Constitution.  Plaintiff has no

protected property or liberty interest in the initiation of a governmental investigation, or

in the particular outcome of an investigation by DSS.  *See Town of Castle Rock*, 545

U.S. at 762 (no constitutional right to governmental investigation); *Hilbert v. County of

Tioga*, No. 3:03-CV-193, 2005 WL 1460316, at *11 (N.D.N.Y. June 21, 2005) (state

child protection legislation did not create procedural due process right to control scope

or outcome of investigation).  Therefore, plaintiff has failed to state a procedural due

---

[7] The complaint also alludes to subsequent family court petitions that may still be
pending, potentially requiring absention under *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).
While *Younger* abstention does not apply to monetary damages, to the extent that such damages
would be available, the court would have to stay the action, pending the state court's decision.

process claim in his complaint.

In order to state a "substantive due process claim" against defendants Fitzgerald, Hurley, and/or Hochmuth, plaintiff would have to demonstrate that the social workers' actions were "so egregious" and "so outrageous" as to "shock the contemporary conscious," regardless of the fairness of the procedures used. *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012) (citations omitted); *Callahan v. City of New York*, No. 13-CV-2726, 2015 WL 1119728, at *8 (E.D.N.Y. Mar. 1, 2015). Plaintiff alleges that defendants' investigation of child abuse allegations were insufficient, that defendants refused to provide him legal advice, and that defendants advised him to seek the assistance of an attorney. (Compl. ¶¶ 14, 20). He also alleges that defendant Hochmuth insulted him because he was incarcerated in a maximum security prison. (Compl. ¶ 22). While plaintiff has characterized defendants as "grossly negligent" and described remarks that may be rude or unhelpful, his concerns do not rise to the level of a substantive due process claim. The alleged failure of defendants to meet local or professional standards, without more, does not rise to the level of a constitutional violation. *See Wilkinson v. Russell*, 182 F.3d 89, 106 ("faulty" investigation by social workers did not rise to the level of a constitutional violation). Therefore, plaintiff has failed to state a substantive due process claim.

## IV.    **Equal Protection**

### A.    **Legal Standards**

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 533 U.S. 591, 601 (2008). To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006). Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). The Equal Protection Clause "secure[s] every person . . . . against intentional and arbitrary discrimination" by state officials. *Willowbrook v. Olech*, 528 U.S. 562, 564, (2000). Thus, in a "class of one" claim, the Equal Protection

13

Clause requires a "rational basis for the difference in treatment." *Id.*

### B. Application

Plaintiff claims that defendants Fitzgerald, Hurley, and Hochmuth violated his equal protection rights by failing to provide sufficient services as required by state law and professional standards. A violation of state law, by itself, cannot support a claim under section 1983. *Treistman v. Wacks*, No. 1:12-CV-1897, 2014 WL 6685473, at *7 (N.D.N.Y. Nov. 26, 2014) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). Plaintiff also failed to demonstrate that he has been treated differently than other similarly situated individuals. His claim is based upon speculative conclusions drawn from one alleged intemperate remark from defendant Hochmuth. The "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ziomek v. Am. Red Cross*, No. 3:15-CV-980, 2016 WL 6551369, at *2 (N.D.N.Y. Nov. 10, 2016) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff makes general statements of mistreatment, which are couched as Equal Protection claims, but are really conclusions that have no stated basis. Such conclusory allegations are insufficient to state a claim under the civil rights statutes. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

## V. Municipal Liability

### A. Legal Standards

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court

outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (Rep't.-Rec.) (citing, *inter alia, Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010)), *adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

### B.    Application

Plaintiff alleges that the alleged unresponsive and unhelpful behavior by

defendants Fitzgerald, Hurley, and Hochmuth  is a "common practice" that is "widely used," thus giving rise to liability for the County of Schenectady as a municipal entity. He offers no support for this conclusion.  Therefore, even if plaintiff had sufficiently alleged a constitutional claim against either Fitzgerald, Hurley, or Huchmoth, his conclusory allegations of a wider practice or policy are insufficient to state a claim against the County of Schenectady.  *See Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (allegations that defendant acted pursuant to a municipal policy or practice, without any facts suggesting the policy's existence, "are plainly insufficient").

## VI.   Judicial Immunity - Court Clerks

### A.   Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991).  Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004).  Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Judicial immunity is immunity from suit, not just immunity from the assessment of damages.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The only two circumstances in which judicial immunity does not apply is when a judge takes action

"outside" his or her judicial capacity or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

The courts have extended judicial immunity to persons other than a judge "who "perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). This absolute judicial immunity covers only certain functions performed by court clerk, namely tasks "which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding that a clerk's scheduling duties, as part of "[a] court's inherent power to control its docket" is subject to absolute immunity). The same protection applies to court clerk functions performed pursuant to the established practice of the court. *See Humphrey v. Court Clerk for the Second Circuit*, No. 5:08-363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010).

## B.    Application

Plaintiff alleges that defendants Riggi and Colon have interfered with his access to the courts because there has not "been any action on his custody enforcement petitions." (Compl. ¶ 24). Plaintiff has not explained how defendants Riggi and Colon are responsible for the alleged delays in his Family Court proceeding, but such claims relate to tasks that are "judicial in nature" and are therefore barred by judicial immunity.

Plaintiff also alleges that defendants Riggi and Colon deprived him of due process because they have not responded to his FOIL requests, or have provided insufficient responses. (Compl. ¶ 24). These claims relate to court record-keeping, which would appear on their face to constitute judicial actions or clerk functions performed pursuant to the court's established practice. Therefore, judicial immunity would apply. However, even if judicial immunity did not apply, plaintiff has not stated a due process claim, and the claims should be dismissed.

To state a due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F. 2d 70, 72 (2d Cir. 1988). It is well-established that a plaintiff has no property interest in obtaining FOIL documents. *See Blount v. Brown*, No. 10-CV-1548 (ARR), 2010 WL 1945858, *2 (E.D.N.Y. May 11, 2010) (collecting cases). Thus, without the property interest in the documents requested under FOIL, the alleged failure to produce the requested documents does not amount to a constitutional violation. *Id.*

Even if plaintiff could show a property interest arising from his FOIL request, his due process claim would still fail as a matter of law because he has not shown that the state post-deprivation process is inadequate. New York provides an administrative appeals process under FOIL, and a person may appeal that decision by commencing a proceeding in state court under Article 78 of the New York Civil Practice Law and

Rules.  *See* N.Y. PUB. OFF. LAW § 89(4).  Therefore, with respect to the question of constitutional due process and FOIL requests, "adequate process is clearly available through an Article 78 proceeding to remedy an improper denial of disclosure."  *Ferrara v. Superintendent, N.Y.S. Police Dep't*, 26 F.Supp.2d 410, 415 n.3 (N.D.N.Y. 1998).

## VII.   <u>Statute of Limitations</u>

### A.   **Legal Standards**

The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5).  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted).  Equitable tolling principles have applied when plaintiff "actively" pursued his judicial remedies, but filed a defective pleading within the appropriate time period.  *Brown v. Parkchester S. Condominiums*, 287 F3d 58, 60 (2d Cir. 2002) (citations omitted).  Equitable tolling

has also been applied where plaintiff was prevented in some "extraordinary" way from asserting his rights, or where he asserted his rights in the wrong forum. *Johnson*, 86 F.3d at 12. In determining whether equitable tolling applies, the court must find that plaintiff acted reasonably diligently throughout the period that he seeks to toll. *Id.*

### B.    Application

Plaintiff alleges misconduct by defendants dating back to May 2013 and August 2014. (Compl. ¶ 9). Therefore, at least some of his claims may be barred by the applicable three year statute of limitations. However, this court has not relied upon the statute of limitations in its recommendation of dismissal, and has reached no conclusions regarding the applicability of equitable tolling.

## VIII. <u>Opportunity to Amend</u>

### A.    Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Application

This court has found that defendants Riggi and Colon are entitled to absolute

immunity regarding at least some of the claims against them, and that plaintiff's remaining FOIL claims do not state a federal due process claim. Therefore, this court will not recommend giving plaintiff the opportunity to amend with respect to these two defendants.

However, the court will recommend dismissal without prejudice to the extent that plaintiff can make some concrete and specific allegations against the remaining defendants Fitzgerald, Hurley, Hochmuth, and County of Schenectady that fall within the applicable statute of limitations.

Any amended complaint must be a complete pleading that supercedes the original. N.D.N.Y.L.R. 7.1(a)(4). Plaintiff may **not** incorporate facts or claims from the original complaint. If the court adopts this recommendation, I will also recommend that the case be sent back to me for review of any proposed amended complaint submitted by plaintiff, and ultimately to order any necessary service of process.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 5) is **GRANTED** for purposes of filing only, and it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as against defendants Riggi and Colon pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), and it is

**RECOMMENDED**, that plaintiff's complaint be dismissed **WITHOUT**

21

**PREJUDICE** as to defendants Fitzgerald, Hurley, Hochmuth, and County of

Schenectady pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and it

is

      **RECOMMENDED**, that if the District Court adopts this Recommendation,

plaintiff be given **SIXTY (60) DAYS** from the date of the District Court's order to

submit a proposed amended complaint for review, and it is

      **RECOMMENDED**, that if plaintiff files an amended complaint prior to the

expiration of the sixty (60) day period, or any extended period granted by the court

upon plaintiff's request, the Clerk be directed to return the amended complaint to me

for initial review.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     May 16, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge

22